RACHAEL A. HONIG
Acting United States Attorney
ANGELA E. JUNEAU
Assistant United States Attorney
402 East State Street, Room 430
Trenton, NJ 08608
862-240-2409
angela.juneau@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARRYL MOODY,<br><br>    *Petitioner*,<br><br>  v.<br><br>DAVID E. ORTIZ,<br><br>    *Respondent*. | HON. RENÉE MARIE BUMB<br><br>*Civil Action No.* 21-12004 |

## RESPONDENT'S ANSWER TO PETITION FOR A
## WRIT OF HABEAS CORPUS

RACHAEL A. HONIG
ACTING UNITED STATES ATTORNEY
*Attorney for Respondent*

ANGELA E. JUNEAU
Assistant United States Attorney

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 1

   I.   Calculation of Moody's Sentence .......................................................... 1

   II.   Earned Time Credits Under the First Step Act ..................................... 2

   III.   Moody's Programming at FCI Fort Dix .............................................. 6

   IV.   Moody's Failure to Exhaust Administrative Remedies ....................... 8

ARGUMENT ........................................................................................................... 10

   I.   Moody Failed to Fully Exhaust Administrative Remedies with Respect to the Claim Raised in This Petition ..................................................................... 10

   II.   The Court Should Deny the Petition Because Moody Has Not Completed Enough Programming to Obtain Earned Time Credits ........................................ 13

       A.   Implementation of the Risk and Needs Assessment System Is Committed to the Discretion of the BOP .................................................................. 13

       B.   Moody Has Not Taken the Programming Necessary to Obtain Earned Time Credits .............................................................................................. 18

CONCLUSION ....................................................................................................... 20

i

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Arias v. U.S. Parole Comm'n,*
  648 F.2d 196 (3d Cir. 1981) ................................................................................ 11

*Auer v. Robbins,*
  519 U.S. 452 (1997) ............................................................................................ 14

*Blow v. Schultz,*
  Civ. No. 08-2307, 2008 U.S. Dist. LEXIS 96052 (D.N.J. Nov. 21, 2008) ............... 12

*Briley v. Warden Fort Dix FCI,*
  703 F. App'x 69 (3d Cir. 2017) ............................................................................ 11

*Brown v. Grondolsky,*
  No. 09-3290 (RMB), 2009 WL 2778437 (D.N.J. Aug. 31, 2009) ........................... 11

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
  467 U.S. 837 (1985) ...................................................................................... 13, 14

*DeFoggi v. United States,*
  No. 20-3889 (NLH), 2020 WL 2899495 n.1 (D.N.J. June 3, 2020) ..................... 2, 3

*Gambino v. Morris,*
  134 F.3d 156 (3d Cir. 1998) ................................................................................ 11

*Goodman v. Ortiz,*
  No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020) ............................ 4

*Goodman v. Ortiz,,*
  2020 U.S. Dist. LEXIS 153824 (D.N.J. Aug. 25,2020) ........................................... 9

*Hare v. Ortiz,*
  No. 20-14093 (RMB), 2021 WL 391280 (D.N.J. Feb. 4, 2021) ............................. 18

*Llufrio v. Johns,*
  No. 19-122, 2020 WL 5248556 (S.D. Ga. Aug. 13, 2020), *report and
  recommendation adopted,* 2020 WL 5245133 (S.D. Ga. Sept. 2, 2020).  ................. 2

*Lopez v. Davis,*
  531 U.S. 230 (2001) ............................................................................................ 14

*Moscato v. Fed. Bureau of Prisons,*
  98 F.3d 757 (3d Cir. 1996) .................................................................................. 10

*Simon v. Bergami,*
  No. 21-0489 (NLH), 2021 WL 3856256 (D.N.J. Aug. 30, 2021) ........................... 12

*Skidmore v. Swift & Co.,*
  323 U.S.134 (1944) ...................................................................................... 14, 15

*Smiley v. Citibank (South Dakota), N.A.,*
  517 U.S. 735 (1996) ...................................................................................... 13, 14

*Thomas Jefferson Univ. v. Shalala,*
  512 U.S. 504 (1994) ............................................................................................ 14

*United States v. Mead,*
   533 U.S. 218 (2001) ................................................................ 14
*Vasquez v. Strada,*
   684 F.3d 431 (3d Cir. 2012) .................................................. 10
*Velez v. Zickefoose,*
   No. 10-3992 (NLH), 2010 WL 5186158 (D.N.J. Dec. 15, 2010) ............... 11
*Woodford v. Ngo,*
   548 U.S. 81 (2006) ............................................................ 10, 11

## Statutes

18 U.S.C. § 922(g) ............................................................... 2
18 U.S.C. § 3621 ................................................................. 2
18 U.S.C. § 3621(h)(1) ......................................................... 17
18 U.S.C. § 3621(h)(1)(A) ............................................... 3, 16, 17
18 U.S.C. § 3632 ............................................................. 1, 4
18 U.S.C. § 3632(a) ......................................................... 4, 17
18 U.S.C. § 3632(a)(1) ......................................................... 15
18 U.S.C. § 3632(a)(3) ...................................................... 4, 18
18 U.S.C. § 3632(d) ..................................................... 2, 6, 16
18 U.S.C. § 3632(d)(4)(A) .................................................. 15, 18
18 U.S.C. § 3632(d)(4)(B) ...................................................... 17
18 U.S.C. § 3635 ............................................................... 18
18 U.S.C. § 3635(3) ............................................................. 5
18 U.S.C. § 3635(3)(A) ......................................................... 16
21 U.S.C. § 860 ................................................................. 1
28 U.S.C. § 2241 .............................................................. 10

## Regulations

28 C.F.R. § 523.40(b) ......................................................... 15
28 C.F.R. § 523.41(a) ......................................................... 16
28 C.F.R. § 523.41(c)(1) ...................................................... 15
28 C.F.R. § 523.42(b) ......................................................... 17
28 C.F.R. § 523.42(d)(1) ...................................................... 17
28 C.F.R. § 542.10 ............................................................. 8
28 C.F.R. § 542.13 ............................................................. 8
28 C.F.R. § 542.14(a) .......................................................... 8
28 C.F.R. § 542.15(a) .......................................................... 9
28 C.F.R. § 545.21(f) ......................................................... 18
28 C.F.R. § 545.24(a) ......................................................... 18

## PRELIMINARY STATEMENT

Respondent David Ortiz, warden of the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), respectfully submits this memorandum of law in opposition to the petition for a writ of habeas corpus brought by petitioner Darryl Moody.  Moody, a federal inmate at FCI Fort Dix, argues that the Federal Bureau of Prisons has failed to properly award him 1,006 days of Earned Time Credit for his participation in Evidenced-Based Recidivism Reduction programs and Productive Activities in light of the First Step Act, 18 U.S.C. § 3632.  *See* Moody's Petition for a Writ of Habeas Corpus (ECF No. 1) ("Petition.") at 6.  Moody, however, has not completed any qualifying programs or activities that would entitle him to Earned Time Credit.  Moody also states that he did not exhaust his administrative remedies before bringing this action because he did not believe that he "would have obtained a different response from that of the warden or the director or the Director of the Bureau of Prisons in this region."  Petition at 7.  For the reasons that follow, the Court should dismiss Moody's petition for failure to exhaust administrative remedies or deny the petition on the merits.

## STATEMENT OF FACTS

I.   Calculation of Moody's Sentence

On October 16, 2017, Moody was sentenced in the Eastern District of Pennsylvania to a 120-month term of incarceration for possession with intent to distribute 280 grams or more of cocaine base ("crack") within 1,000 feet of a school, in violation of 21 U.S.C. § 860, and for possession of a firearm by a convicted felon, in

violation of 18 U.S.C. §922(g).  *See* Declaration of Corrie Dobovich ("Dobovich Decl."), Attach. A (Public Information Inmate Data) at 2.  The BOP has calculated Moody's sentence as commencing on October 16, 2017, the date he began to serve this sentence.  Dobovich Decl., Attach. A at 2−3.  The BOP has awarded Moody 1,006 days of prior custody credit for time spent in custody before his sentencing.  *See id.* at 3. Assuming Moody receives all good time credits available to him, his projected release date is July 22, 2023.  *See id.* at 1.

II.   Earned Time Credits Under the First Step Act

The First Step Act of 2018, signed into law on December 21, 2018, amends 18 U.S.C. § 3621, the statute governing the calculation of federal sentences.  Among other provisions, the First Step Act required the Attorney General, within 210 days of the date of enactment, to develop a "risk and needs assessment system" for federal inmates that would "provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs."  18 U.S.C. § 3632(d). The Attorney General met this deadline on July 19, 2019, when the BOP released the "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN").  *See Llufrio v. Johns,* No. 19-122, 2020 WL 5248556, at *2 (S.D. Ga. Aug. 13, 2020), *report and recommendation adopted*, 2020 WL 5245133 (S.D. Ga. Sept. 2, 2020).  PATTERN "determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk."  *DeFoggi v. United States*, No. 20-3889 (NLH), 2020 WL 2899495, at *2 n.1 (D.N.J. June 3, 2020) (quotations omitted).  "The system

2

also assesses each inmate and determines, to the extent practicable, the inmate's risk of violent or serious misconduct." *Id.*

The First Step Act also directed the BOP to "implement and complete an initial intake risk and needs assessment for each prisoner" and "begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination" within 180 days of PATTERN's release date (that is, by January 15, 2020). 18 U.S.C. § 3621(h)(1)(A).

The BOP has identified the following "needs" that agency staff should assess for each inmate:

- Anger/Hostility
- Finance/Poverty
- Antisocial Peers
- Medical
- Cognitions
- Mental Health
- Dyslexia
- Recreation/Leisure/Fitness
- Education
- Substance Abuse
- Family/Parenting
- Trauma
- Work

*See* Declaration of Jason Bazydlo ("Bazydlo Decl."), ¶ 6, Attach. B (Memorandum for All CEOs) at 1; February 2021 First Step Act Approved Programs Guide, ("FSA Approved Programs Guide") available at https://www.bop.gov/inmates/fsa/docs/fsa_program_guide_202010.pdf (last visited September 6, 2021) at 2.

In enacting 18 U.S.C. § 3632, the First Step Act directed the BOP to use the Risk and Needs Assessment to classify inmates at risk of recidivism, match inmates with suitable programs "based on the prisoner[s'] specific criminogenic needs," and offer incentives for completing these programs, including Earned Time Credit toward pre-release custody. 18 U.S.C. § 3632(a)(3); *see generally* 18 U.S.C. § 3632(a), (d). The BOP has approved a number of "evidence-based recidivism reduction programming" and "productive activities" ("EBRR programs" and "PAs," respectively) that inmates may complete to obtain Earned Time Credits. *See* FSA Approved Programs Guide at 4–43.[1]

The First Step Act defines "Evidence-based Recidivism Reduction Program" and Productive Activities" as follows:

> (3) EVIDENCE-BASED RECIDIVISM REDUCTION PROGRAM.— The term "evidence-based recidivism reduction program" means either a group or individual activity that—
>
> (A) has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism;
>
> (B) is designed to help prisoners succeed in their communities upon release from prison; and
>
> (C) may include—
>
>> (i) social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;
>>
>> (ii) family relationship building, structured parent-child interaction, and parenting skills;

---

[1]     The BOP must fully implement this programming by January 15, 2022. *See Goodman v. Ortiz*, No. 20-7582 (RMB), 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020) (noting full implementation date).

(iii) classes on morals or ethics;

(iv) academic classes;

(v) cognitive behavioral treatment;

(vi) mentoring;

(vii) substance abuse treatment;

(viii) vocational training;

(ix) faith-based classes or services;

(x) civic engagement and reintegrative community services;

(xi) a prison job, including through a prison work program;

(xii) victim impact classes or other restorative justice programs; and

(xiii) trauma counseling and trauma-informed support programs.

….

 (5) PRODUCTIVE ACTIVITY.—

The term "productive activity" means either a group or individual activity that is designed to allow prisoner determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating, and may include the delivery of the programs described in paragraph (1) [1] to other prisoners.

18 U.S.C. § 3635(3), (5).

To receive Earned Time Credit under the First Step Act, an inmate must successfully complete one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate. *See* Bazydlo Decl. ¶ 10.  The statute provides:

(A) In general.— A prisoner, except for an ineligible prisoner under subparagraph (D), *who successfully completes evidence-based recidivism reduction programming or productive activities*, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A)(i)−(ii) (emphasis added).  The BOP's list of approved EBRR programs and PAs also sets out the duration that constitutes "completion" of the program/activity.  *See* FSA Approved Programs Guide at 4−43.

III.    Moody's Programming at FCI Fort Dix

On December 3, 2019, BOP staff found Moody eligible to earn Earned Time Credits under 18 U.S.C. § 3632(d) because he did not have a disqualifying offense under the statute.  *See* Bazydlo Decl. ¶ 4, Attach. A (Inmate History, First Step) at 1.

On December 3, 2019, BOP staff conducted a Risk Assessment for Moody and determined he had a medium risk of recidivism.  *See* Bazydlo Decl. ¶ 5, Attach. A (Inmate History, First Step) at 1.  BOP staff reassessed Moody and found he had a minimum risk of recidivism on July 13, 2020; December 1, 2020; April 28, 2021; and May 19, 2021.  *See id.*

With respect to needs, BOP staff have determined that Moody has the following needs as of the dates indicated:

- Anger/Hostility as of December 23, 2019

- Substance Abuse as of May 30, 2021

- Work as of August 6, 2020

- Finance/Poverty as of August 6, 2020; a May 30, 2021, reassessment found Moody no longer had that need

*See* Bazydlo Decl., ¶¶ 13–16, Attach. A (Inmate History).  On June 1, 2018, BOP staff determined that Petitioner also had a need in Family/Parenting.[2]  *See* Bazydlo Decl. ¶ 17, Attach. C (Inmate History Case Mgmt.).   On May 30, 2021, Petitioner was offered the Psychological Services Intake Questionnaire self-report screening tool to assess his needs in the areas of Antisocial Peers, Cognitions, and Trauma.  *Id.* at ¶¶ 8, 18.  Moody, however, declined to complete the form, thus his needs in these three areas have not been assessed.  *Id.* at 18, Attach. A (Inmate History).

With respect to specific programming, Moody has not completed any approved EBRR programs or PAs correlating with one of his assigned needs since he was assessed.  *See* Bazydlo Decl. ¶ 22, Attach. C (Inmate History PT Other).  Moody is presently on the waiting list to participate in the Anger Management program, which will meet the need of Anger/Hostility upon his successful completion of all EBRR program requirements.  *See* Bazydlo Decl. ¶ 19–20, Attach. D (Inmate History PT Other); FSA Approved Programs Guide at 4.  Moody is also on the waiting list to participate in the Narcotics Anonymous program, which will meet the need of Substance Abuse upon his successful completion of all EBRR program requirements.

---

[2]     Parenting need is indicated by "Dependents Under 21 – Yes."  Bazydlo Decl. ¶ 10, Attach. C (Inmate History Case MGT).

*See* Bazydlo Decl. ¶ 19, 21, Attach. D (Inmate History PT Other); FSA Approved Programs Guide at 38.  Further, Moody is not presently assigned to a Federal Prison Industries ("UNICOR") work assignment, which would qualify as an EBRR or PA and would provide him with Earned Time Credit to meet his Work need.  *See* Bazydlo Decl. ¶ 23, Attach. E (Inmate History, Work); FSA Approved Programs Guide at 14.

In sum, Moody has not completed any EBRR programs or PAs that would qualify him for any Earned Time Credit.  Moody remains on a waitlist for the Anger Management program, the completion of which will satisfy his Anger/Hostility need, as well as for the Narcotics Anonymous program, the completion of which will satisfy his Substance Abuse need, but he has not begun either program.  Because Moody has not held a UNICOR work assignment since he was assessed, he has not begun to meet his Work need.  Further, Moody has not completed any approved programming to address his need in Family/Parenting.  Accordingly, Moody has not yet earned any EBRR credits to qualify for Earned Time Credit.

## IV.   Moody's Failure to Exhaust Administrative Remedies

BOP has established a four-step process for federal inmates to exhaust administrative remedies.  *See* 28 C.F.R. § 542.10 *et seq.*  To comply with this process, an inmate generally must first attempt to informally resolve his dispute with prison staff.  *See* 28 C.F.R. § 542.13.  If these efforts fail, the inmate must then submit a BP-9 administrative remedy request to the warden of his institution within twenty days of the event or decision underlying the request.  *See* 28 C.F.R. § 542.14(a), (c).  If the administrative remedy request is denied, the inmate must then file a BP-10 appeal

with the appropriate Regional Director within twenty days of the date of the warden's response.  *See* 28 C.F.R. § 542.15(a).  If the Regional Director denies the appeal, the inmate must then appeal that decision by filing a BP-11 appeal with the BOP's Central Office, General Counsel, within thirty days from the date of the Regional Director's response.  *See id.*

According to BOP records, Moody filed two administrative remedy requests with the warden of FCI Fort Dix: one on August 24, 2020, and one on October 2, 2020. *See* Dobovich Decl. ¶ 6, Attach. B (Administrative Remedy Generalized Retrieval). Neither administrative remedy request, however, pertained to Earned Time Credits under the First Step Act.[3]  *See id.*

On May 18, 2021, Moody filed an Inmate Request to Staff, addressed to his case manager, seeking "to have my earned time credits given to me in accordance with the First Step Act and pursuant to the recent case in the United States District Court, District of New Jersey, *Goodman v. Ortiz*, 2020 U.S. Dist. LEXIS 153824 (D.N.J. Aug. 25, 2020).  Please inform me of any necessary steps that I have to take to follow the proper procedures."  Petition at 2, 9.  That same day, Moody's case manager denied his request on the basis that he was "not eligible to be reviewed at this time."  *Id.* at 9.  In his petition Moody states that he did not "appeal the decision, file a grievance, or seek an administrative remedy" because he did not believe he

---

[3] Both administrative remedy requests were regarding "request C.R. [compassionate release] due to Covid."  *See* Dobovich Decl., Attach. B (Administrative Remedy Generalized Retrieval).

"would have received a different response from the warden or the director of the Bureau of Prisons in the region."  *Id.* at 2.

ARGUMENT

I.   <u>Moody Failed to Fully Exhaust Administrative Remedies with Respect to the Claim Raised in This Petition</u>

The Court should dismiss Moody's petition because he did not fully exhaust administrative remedies on his present claim.

Before a federal inmate can seek habeas relief in district court pursuant to 28 U.S.C. § 2241, he must first exhaust his administrative remedies.  *See Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760−62 (3d Cir. 1996).  As the Supreme Court has recognized, the exhaustion requirement serves a number of critical interests:

> First, exhaustion protects administrative agency authority.  Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures.

> Second, exhaustion promotes efficiency.  Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.  In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court.  And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

*Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (internal citations and quotation marks omitted).

10

Courts within this Circuit therefore require an inmate to exhaust administrative remedies because exhaustion promotes these important interests. *See Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981) (noting that Third Circuit has "adhered to the exhaustion doctrine for several reasons: (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors") (citation omitted); *see also Briley v. Warden Fort Dix FCI*, 703 F. App'x 69, 71 (3d Cir. 2017). Indeed, although *Woodford* concerned the exhaustion requirement imposed by the Prison Litigation Reform Act, the purposes of exhaustion identified by the Court—protecting agency authority and promoting efficiency—apply equally to habeas petitions. *See Woodford*, 548 U.S. at 93 ("In practical terms, the law of habeas, like administrative law, requires proper exhaustion[.]"); *Arias*, 648 F.2d at 199.

Although courts may excuse the exhaustion requirement for habeas petitions under limited circumstances, such as when exhaustion would be futile, *see, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998), courts routinely enforce the requirement where, as here, there is no compelling justification to excuse the petitioner's failure to exhaust. *See, e.g., Velez v. Zickefoose*, No. 10-3992 (NLH), 2010 WL 5186158, at *3 (D.N.J. Dec. 15, 2010) ("it has been long established that an inmate's unjustified failure to pursue administrative remedies results in procedural default warranting decline of judicial review"); *Brown v. Grondolsky*, No. 09-3290

(RMB), 2009 WL 2778437, at *1-2 (D.N.J. Aug. 31, 2009) (exhaustion requirement "is diligently enforced by the federal courts" and futility exception applies only in "narrowly-defined circumstances") (citation omitted).

Applying these principles here, the Court should deny habeas relief.  Moody concedes that he did not exhaust his administrative remedies because he did not believe he "would have received a different response from the warden or the director of the Bureau of Prisons in the region."  Petition at 2.  Such a belief, however, is not a basis for excusing exhaustion.  While futility may serve as such a basis, courts have found exhaustion futile when, if a petitioner's claim had merit, the petitioner would be released relatively soon and forcing the petitioner to exhaust would result in extending his sentence.  *See Blow v. Schultz*, Civ. No. 08-2307, 2008 U.S. Dist. LEXIS 96052, *16−17 (D.N.J. Nov. 21, 2008).  Here, assuming Moody receives all good time credits available to him, his projected release date is July 22, 2023.  *See* Dobovich Decl., Attach. A at 1.  Because Moody has nearly two years before he is projected to be released, he has plenty of time in which to complete the administrative process before bringing a habeas petition, thus exhaustion is not futile.  Accordingly, the Court should find that Moody's failure to complete the administrative process before bringing this petition precludes him from obtaining relief, and the Court should dismiss the petition.  *See, e.g., Simon v. Bergami,* No. 21-0489 (NLH), 2021 WL 3856256, at *4 (D.N.J. Aug. 30, 2021) (dismissing petition seeking Earned Time Credits for failure to exhaust).

II.   The Court Should Deny the Petition Because Moody Has Not Completed
Enough Programming to Obtain Earned Time Credits

Moody argues that the BOP has failed to award him 1,006 days of Earned Time

Credit that, he claims, he has earned based on the numerous courses he has taken

while incarcerated as well as his job assignment.  *See* Petition at 6.  This claim is

unpersuasive.  While Moody points to the Small Business Management, Business

Math, and Technical Math courses that he has taken, he completed all of these

courses prior to January 15, 2020, and none of them were approved EBRR programs

that met his assessed needs.  Further, Moody points to his job assignment as a barber,

but his job assignment is not a qualifying UNICOR job.  Accordingly, Moody has not

yet completed any EBRR programs or PAs that would entitle him to Earned Time

Credit.  Thus, the Court should deny his request for habeas relief.

A.   Implementation of the Risk and Needs Assessment System Is Committed to
the Discretion of the BOP

Under bedrock principles of administrative law, courts accord deference to an

interpretation of a statute adopted by the agency that has been "charged with

responsibility for administering the provision" by Congress.  *Chevron, U.S.A., Inc. v.

Natural Res. Def. Council, Inc.*, 467 U.S. 837, 865 (1985); *see also Smiley v. Citibank

(South Dakota), N.A.*, 517 U.S. 735, 739 (1996) ("It is our practice to defer to the

reasonable judgments of agencies with regard to the meaning of ambiguous terms in

statutes that they are charged with administering."). Courts give weight to an

agency's interpretation of a statute it administers because of the "presumption that

Congress, when it left ambiguity in a statute meant for implementation by an agency,

understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley*, 517 U.S. at 740‒41. Courts similarly accord deference to an agency's interpretation of its regulations. *See Auer v. Robbins*, 519 U.S. 452, 461‒62 (1997); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 513 (1994).

Although courts accord deference to an agency's interpretation of a statute it administers, the level of deference varies. If Congress delegated authority to an agency to make rules with the force of law and the agency acted pursuant to that delegated authority in interpreting the statutory scheme, then courts review that statutory interpretation under the standards set forth in *Chevron*. *See United States v. Mead*, 533 U.S. 218, 226‒27 (2001). Under *Chevron*, if the statute is silent or ambiguous, the courts will uphold the agency's interpretation if it "is based on a permissible construction of the statute." 467 U.S. at 845; *see also Lopez v. Davis*, 531 U.S. 230, 242 (2001) (holding that the BOP had the authority to fill the "statutory gap" in § 3621(e)'s early release provision in a reasonable manner in light of the Congress' "revealed design").

If *Chevron* does not apply, courts at a minimum accord deference to the agency's statutory interpretation under the standard set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Mead*, 533 U.S. at 231‒32. In *Skidmore*, the Supreme Court recognized that agency interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." 323 U.S. at 140. The Court therefore held that such agency interpretations are given

"considerable and in some cases decisive weight," depending upon the "thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]" *Id.*

The BOP has reasonably interpreted five provisions of the First Step Act relevant to Moody's claim for Earned Time Credits.

First, in section 3632(d)(4)(A), Congress provided that an inmate may obtain Earned Time Credits if he "successfully completes" EBRR programming and productive activities.  18 U.S.C. § 3632(d)(4)(A).  The BOP has interpreted this provision as requiring the inmate to actually complete the program in question, that is, it will not award Earned Time Credits for partial completion.  *See* 85 Fed. Reg. at 75271 (proposed regulation 28 C.F.R. § 523.41(c)(1)).  This interpretation is reasonable because the statute only awards credits to inmates who "successfully complete[]" the relevant programming.

Second, the BOP has interpreted the First Step Act as only requiring time credits for successful completion of EBRR programming and productive activities staff have *assigned* to the inmate based on their assessed needs.  *See* Fed. Reg. at 75271 (proposed regulation 28 C.F.R. § 523.40(b)).  This interpretation reasonably follows the intent of the First Step Act and several provisions within the Act.  The First Step Act directs the BOP to (1) assess inmates' recidivism risk and the criminogenic needs that increase their recidivism risk, 18 U.S.C. § 3632(a)(1), (3); (2) develop programming that is proven to reduce recidivism or maintain a low risk of

recidivism, 18 U.S.C. § 3635(3)(A), (5); (3) assign inmates to those programs, 18 U.S.C. § 3621(h)(1)(A); and (4) provide incentives to encourage inmates to participate in programming and thereby reduce their risk of recidivism, 18 U.S.C. § 3632(d). Based on this statutory scheme, Congress did not intend to reward inmates for completing programming in general; rather, Congress intended to reward inmates for reducing their risk of recidivism by participating in programming targeted to their specific needs. Therefore, the BOP has reasonably interpreted the FSA to require staff to assign an inmate to a particular EBRR program or productive activity based on his specific needs before the inmate may obtain Earned Time Credits for successfully completing that programming.

Third, and related to the assignment of programming, the BOP has reasonably interpreted the statute to award credit for only those programs it has determined meet the statutory definitions of EBRR programming or productive activities. *See* 85 Fed. Reg. at 75271 (proposed regulation 28 C.F.R. § 523.41(a)). To award FSA time credits for any programming offered at an institution would run contrary to Congress's intent to incentivize participation in programs targeted to reduce recidivism. Indeed, Congress explicitly defined EBRR programming to be one that "has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism." 18 U.S.C. § 3635(3)(A).

Fourth, the BOP has reasonably interpreted the First Step Act to make Earned Time Credits available only for EBRR programming and productive activities

assigned and completed after January 15, 2020. *See* 85 Fed. Reg. at 75272 (proposed regulation 28 C.F.R. § 523.42(d)(1)). Congress indicated inmates may not earn time credits for successful completion of EBRR programming and productive activities completed "prior to the enactment of this subchapter." 18 U.S.C. § 3632(d)(4)(B). While Subchapter D establishes July 19, 2019, as an effective date for the development of the risk and needs assessment system, *see* 18 U.S.C. § 3632(a), Congress gave the Bureau to January 15, 2020, to begin to implement the system. *See* 18 U.S.C. § 3621(h)(1). Implementation includes completing an inmate's initial risk and needs assessment and assigning the inmate to EBRR programming and productive activities. 18 U.S.C. § 3621(h)(1)(A). To allow inmates to earn FSA time credits for successful completion of EBRR programming or productive activities before the BOP has assessed their risk and needs and assigned them to the programming is inconsistent with the congressional intent in enacting the FSA. Therefore, it is reasonable for the BOP to use January 15, 2020, as the starting date of when time credits can be earned.

Finally, for purposes of determining what qualifies as "30 days of successful participation" in EBRR programming and productive activities, the BOP has reasonably interpreted a "day" as one eight-hour period of programming. *See* 85 Fed. Reg. at 75272 (proposed regulation 28 C.F.R. § 523.42(b), (c)). While a calendar day encompasses twenty-four hours, defining a day of programming as twenty-four hours of programming is not reasonable as it potentially minimizes the incentivizing nature of time credits for successful completion of programming. For purposes of inmate

work assignments, the Bureau has indicated a "work day . . . ordinarily consists of a minimum of seven hours."  28 C.F.R. § 545.24(a).  Further, inmates may have a part-time work assignment to allow them to participate in programming for a portion of the day and work the remainder.  28 C.F.R. § 545.21(f).  Establishing a programming day under the FSA as an eight-hour period by reference to the BOP's policies on inmate work is a reasonable interpretation of the FSA.

B. <u>Moody Has Not Taken the Programming Necessary to Obtain Earned Time Credits</u>

Moody alleges that he is eligible for 1,006 days of Earned Time Credits based on programming and work he has completed while in federal custody.  His claim, however, lacks any merit, because he has not taken any courses or engaged in any work that would qualify him for Earned Time Credit.

Among other measures, the First Step Act directs the BOP to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs[.]"  18 U.S.C. § 3632(a)(3).  To comply with this directive, the BOP has established a list of Evidence-Based Recidivism Reduction (EBRR) programs and productive activities (PAs) that meet the definitions set out in the 18 U.S.C. § 3635.  *See* FSA Approved Programs Guide at 4–43.  Accordingly, before an inmate can receive Earned Time Credits, he or she must successfully complete EBRR programming or PAs related to one of the specific needs assigned to that inmate.  *See* Bazydlo Decl. ¶ 10; 18 U.S.C. § 3632(d)(4)(A); *Hare v. Ortiz*, No. 20-14093 (RMB), 2021 WL 391280, at *9 (D.N.J. Feb.

4, 2021).  An inmate may obtain ten days of time credit for every thirty days he successfully participates in the EBRR programming or PA.  *See* 18 U.S.C. § 3632(d)(4)(A)(i).

Despite Moody's assertions, he has not completed the programming required to receive Earned Time Credits.  As noted above, the BOP has determined that Moody has needs in Anger/Hostility, Substance Abuse, Work, and Family/Parenting.  *See* Bazydlo Decl., Attach. A (Inmate History) and Attach. C (Inmate History Case Mgmt.).

With respect to specific programming, Moody has not completed any approved EBRR programs or PAs correlating with one of his assigned needs since he was assessed.  *See* Bazydlo Decl. ¶ 22, Attach. C (Inmate History PT Other).  Moody is presently on the waiting list to participate in the Anger Management program, which will meet the need of Anger/Hostility upon his successful completion of all EBRR program requirements.  *See* Bazydlo Decl. ¶ 19–20, Attach. D (Inmate History PT Other); FSA Approved Programs Guide at 4.  Moody is also on the waiting list to participate in the Narcotics Anonymous program, which will meet the need of Substance Abuse upon his successful completion of all EBRR program requirements. *See* Bazydlo Decl. ¶ 19, 21, Attach. D (Inmate History PT Other); FSA Approved Programs Guide at 38.  Further, Moody is not presently assigned to a Federal Prison Industries ("UNICOR") work assignment, which would qualify as an EBRR or PA and would provide him with Earned Time Credit to meet his Work need.  *See* Bazydlo Decl. ¶ 23, Attach. E (Inmate History, Work); FSA Approved Programs Guide at 14.

While Moody points to the Small Business Management, Business Math, and Technical Math courses that he has taken, Petition at 6, he completed all of these courses prior to January 15, 2020, and none of them were approved EBRR programs that met his assessed needs. Further, Moody points to his job assignment as a barber, Petition at 6, but his job assignment is not a qualifying UNICOR job. *See* Bazydlo Decl. ¶ 23, Attach. E (Inmate History, Work); FSA Approved Programs Guide at 14.

In sum, Moody has not completed any EBRR programs or PAs that would qualify him for any Earned Time Credit. Moody remains on a waitlist for the Anger Management program, the completion of which will satisfy his Anger/Hostility need, as well as for the Narcotics Anonymous program, the completion of which will satisfy his Substance Abuse need, but he has not begun either program. Because Moody has not been assigned to a UNICOR work assignment since he was assessed, he has not begun to meet his Work need. Further, Moody has not completed any approved programming to address his Family/Parenting needs. Accordingly, Moody has not yet earned any EBRR credits to qualify for Earned Time Credit, and the Court should deny the petition in all respects.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the petition in its entirety.

Dated:  Newark, New Jersey
        September 8, 2021

                                        Respectfully submitted,

                                        RACHAEL A. HONIG
                                        Acting United States Attorney


                                 By:    s/ Angela E. Juneau
                                        ANGELA E. JUNEAU
                                        Assistant United States Attorney
                                        *Attorney for Respondent*