# BONGIOVANNI LAW

---

**Lucille A. Bongiovanni, Esquire**
1806 S. Broad Street
First Floor
Philadelphia, PA 19145
O. 215.821.7630
F. 215.220.3235
lab@legallyill.com

*Licensed in Pennsylvania and New Jersey*

**Honorable Renée M. Bumb, U.S.D.J.**
United States District Court
Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Street
*Electronically Filed*

RE: Moody v. Ortiz, No. 21-cv-12004-RMB
Response to Supplemental Brief by Respondent

May 31, 2022

Dear Judge Bumb:

Please accept this letter brief in lieu of a more formal brief in support of Petitioner Darryl Moody's habeas corpus petition in which he seeks Court intervention with regard to the Bureau of Prisons' application, or non-application, of the First Step Act, 18 U.S.C.A. § 3632 to the sentence that Petitioner is currently serving at FCI Fort Dix.

## PROCEDURAL HISTORY

Petitioner Darryl Moody was convicted in 2017 of possession with intent to distribute 280 grams or more of cocaine within 1,000 feet of a school in violation of 21 U.S.C. § 860 and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). On October 16, 2017, he was sentenced to 120 months in federal prison. At the time of his sentencing, he had already been in custody for 1006 days, dating back to his January 14, 2015 arrest. (See Exhibit "A", Sentence Monitoring Computation Data as of 4-15-2022).

On June1, 2021, Petitioner filed a "Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241". Such was initially dismissed for failure to include a fee or apply to proceed in forma pauperis, but such application was later submitted and granted and the Petition was reinstated as of June 24, 2021.

Respondent, Warden David E. Ortiz, filed an Answer by and through the Office of the United States Attorney on August 2, 2021, and a response to such was filed by Petitioner on October 7, 2021. On January 24, 2022, the Court ordered Respondent Ortiz to file a supplemental brief calculating Petitioner's Time Credits consistent with the BOP's new final rule. Such supplemental brief was filed by Respondent Ortiz on March 23,

2022.  Petitioner Moody submits the instant brief in response to the March 23, 2022 supplemental brief of Respondent, in accordance with the Court's May 24, 2022 Order extending the due date for such response to May 31, 2022.

## LEGAL ARGUMENT

I.     PETITIONER SHOULD NOT BE BARRED FROM RELIEF BECAUSE OF THE PURPORTED FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Respondent Ortiz argues that Petitioner Moody's petition should be dismissed because Petitioner failed to exhaust administrative remedies. However, such is not always required. As Respondent notes, "courts have found exhaustion futile when, if a petitioner's claim had merit, the petitioner would be released relatively soon and forcing the petitioner to exhaust would result in extending his sentence." September 8, 2021 Answer of Respondent at 16, citing *Blow v. Schultz,* Civ. No. 08-2306, 2008 U.S. Dist. LEXIS 96052, *16-17 (D.N.J. Nov. 21, 2008).  An entire year has already passed since Petitioner filed his petition, and he will soon be within a year of his projected release date as set forth in detail below at Section III.  Forcing Petitioner to exhaust his remedies at the administrative level would have certainly had the potential to extend his release date excessively.  This is especially true in light of the status of the COVID-19 pandemic at the time that Petitioner filed his Habeas petition, as it was reasonable for him to expect that if he were to exhaust administrative remedies prior to filing the present lawsuit, he would not be able to obtain a timely remedy and prevent an untimely release.  *See Gross v. Warden, USP Canaan,* No. 17-2477 (3d Cir. Dec. 20, 2017, *8) ("The administrative exhaustion requirement may be excused if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served", citing *Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235, 239 (3d Cir. 2005)).

II.     PETITIONER IS ELIGIBLE TO EARN CREDITS PURSUANT TO THE FIRST STEP ACT RETROACTIVE TO DECEMBER 21, 2018

Respondent Ortiz argues that Petitioner Moody "has not earned any credits that can be applied to either pre-release custody or supervised release," stating that inmates are only eligible to apply time credits if they have scored a minimum or low risk on the PATTERN assessment. However, the FSA permits inmates with a higher PATTERN score to *earn* Time Credits, 18 U.S.C. § 3632 (d)(4)(a), and Respondent's position that no calculation is necessary because Respondent is not eligible to have the credits *applied* at this time is not tenable. Indeed, Petitioner Moody was already serving his sentence on the date of the FSA's enactment, December 21, 2018, and the Final Rule holds that credits can be earned retroactive to the date of enactment.  87 Fed. Reg. 12 at 2708.

In order to eliminate the risk of an untimely release, of which Petitioner Moody is presently in danger, see Section III below, the earned credits must be calculated. Due to other calculations that have not been appropriately applied, such as credits for clear conduct ("good time"), Petitioner Moody's PATTERN score may potentially change when all appropriate calculations are made, as set forth in greater detail at Section IV.

III.     PETITIONER IS IN DANGER OF AN UNTIMELY RELEASE WHEN CREDITS ARE APPLIED RETROACTIVE TO DECEMBER 21, 2018

The Final Rule allows inmates "to receive retroactive Time Credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment." Because Petitioner Moody has been assessed a "medium" recidivism risk, he may earn 10 days of credit for every 30 days of participation. Since December 21, 2018, Petitioner has consistently participated in activities and/or programs that would earn him FSA credits, a total of forty-one months, or at least 410 days' credit.

Respondent Ortiz concedes in his brief that Petitioner's Good Conduct Time release date is July 22, 2023. Petitioner's Home Detention Eligibility Date is as early as March 1, 2023. (Exhibit "A", Sentence Monitoring Computation Data as of 4/15/2022). If 410 days were subtracted, Petitioner's Good Conduct Time release date would be June 7, 2022—*next week*. Therefore, Petitioner is at risk of an untimely release if his petition is not considered on its merits.

Moreover, Petitioner may continue to earn FSA credits for the remainder of his sentence, increasing his potential sentence reduction even further.

IV.     PETITIONER MUST HAVE ALL GOOD CONDUCT TIME CREDITS APPLIED IN ORDER TO REDUCE HIS RECIDIVISM RISK SCORE AND MUST THEN HAVE HIS FSA CREDITS APPLIED

Respondent Ortiz repeatedly argues that because Petitioner Moody scored a "medium" on his PATTERN assessment, he is not eligible to have credits applied to his sentence under the FSA. However, the FSA clearly contemplates that "medium" scoring inmates would be able to participate in the benefit of the FSA, indeed establishing two separate rates at which to earn credits, based on recidivism risk score. 18 U.S.C. § 3632 (d)(4)(a). As a "medium" scoring inmate, Petitioner Moody is eligible to earn 10 days of FSA credit for every 30 days of participation in recidivism reducing activities and/or programs. The issue is not whether Petitioner Moody can *earn* FSA credits, but whether, or when, they can be *applied*. However, permitting inmates to earn credits without the ability to apply them would be contrary to the stated purpose of the First Step Act, against public policy and in contravention of the Bureau's goals as expressed through the implementation of the First Step Act. It is axiomatic that in order for the FSA to have any effect on the prison system, credits must not only be earned, but applied.

In his October 7, 2021 response, at Par. 6, Page 8, Petitioner Moody states that he has maintained clear conduct for over two years, and has not received the appropriate point deduction for such from his Case Manager. See Final Rule, 87 Fed. Reg. 12 at 2712 ("Time Credits may not be applied to prerelease custody until . . . the remainder of the inmate's impose term of imprisonment has been computed under applicable law (e.g., Good Conduct Time Credit[ )]"). He further states that such point deduction would effect his PATTERN

score, potentially bringing him into the "low" range and thus rendering him eligible for the application of FSA credits. Without such action, Petitioner Moody will be stuck in an endless loop, unable to have any of his earned credits applied until it is too late and he has been detained excessively. As demonstrated above, appropriate application of Petitioner Moody's already-earned credits could potentially result in his near-immediate release.

  V.  PETITIONER'S CREDITS PRIOR TO JANUARY 2020 NEED NOT BE SPECIFIC TO HIS ASSESSED NEEDS IN ORDER TO BE CREDITED TO PETITIONER

In its Final Rule, as stated above, the Bureau of Prisons permitted retroactive application of credits to the date of the statute's enactment on December 21, 2018. Accordingly, the Bureau recognized that the system of identifying particular needs and permitting inmates to earn credits for programs and activities that address those identified needs was not practical for the period from enactment to January 15, 2020, the date all inmate assessments had been completed. Instead, for programming during that time period:

> the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or Pas recommended based on a risk and needs assessment after January 2020 to determine the inmate's retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018 and January 14, 2020 and be awarded Time Credits accordingly.

87 Fed. Reg. 12, 2708. Therefore, even if Petitioner Moody is not entitled to credits from January 15, 2020 forward (which he should be, as argued below), he would be entitled to credits for 2019, resulting in at least 4 months' worth of applicable credits (i.e., 10 days for every 30 days for one year). Even this amount of credit would have a substantial effect on his release date, which is now only thirteen months away prior to the application of Good Time or FSA credits.

  VI.  PETITIONER SHOULD NOT BE CONFINED TO EARN CREDITS FROM IDENTIFIED NEEDS WHEN RESPONDENT CONCEDES MANY OF THE IDENTIFIED NEED COURSES WERE NOT MADE AVAILABLE TO PETITIONER

Respondent Ortiz concedes that Petitioner Moody "was on the waiting list for programs that correlated with his assigned needs." March 23, 2022 brief at p. 2. In the Final Rule, the Bureau of Prisons clearly states that "inmates will not be penalized if specifically recommended EBRR Programs or PAs are unavailable to them or at full enrollment at their facilities." 87 Fed. Reg. 12 at 2711. This comment must be read as part of the complete Final Rule, and this comment in particular was in response to the idea of the FSA applying more broadly and to a longer list of programs and activities. In the spirit of this policy, it is appropriate to award Petitioner Moody credits for the programs and activities he identifies, such as participation in religious services (a category appropriate for FSA credit according to the Final Rule) and his prison employment as a barber. The

fact that his job as a barber is not under the umbrella of UNICOR or Federal Prison Industries (FPI) elevates form over substance—the reduction in recidivism meant to be effectuated by the discipline, routine, structure and rewarding nature of a job are the same, regardless of whether the job is through FPI.  Permitting Petitioner Moody to apply FSA credits for participating in these programs and activities is even more appropriate in light of the unavailability of the "appropriate" courses based on his assessed needs, which unavailability is undisputed.  All parties concede that Petitioner Moody was wait-listed for such courses, and in light of the pandemic, his opportunities were limited even further.

## CONCLUSION

For the reasons above, Petitioner Darryl Moody's writ of habeas corpus should be granted and the Bureau of Prisons should apply appropriate credits under the First Step Act, 18 U.S.C. § 3632, to reduce Petitioner's federal prison sentence.

Respectfully Submitted,

**BONGIOVANNI LAW**

BY: _____
Lucille A. Bongiovanni, Esquire

c: Assistant U.S. Attorney Angela Juneau, Esquire *by electronic filing*
   Darryl Moody