IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| DARRYL MOODY, | : | CIV. NO. 21-12004 (RMB) |
| Petitioner | : | |
| v. | : | **OPINION** |
| ACTING WARDEN T. GUBBIOTTI,[1] | : | |
| Respondent | : | |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon Petitioner Darryl Moody's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Docket No. 1), where he seeks early release by applying Time Credits ("TCs") he earned for completion of recidivism reduction programming and productive activities under the First Step Act ("FSA") toward his early release. Respondent filed an answer to the petition and opposes habeas relief (Docket No. 4). Petitioner filed briefs in reply to the answer (Docket Nos. 5, 6), and the parties filed supplemental briefs in response to this Court's orders to show cause. (Doc. Nos. 21, 22, 24, 25, 26, 27.) For the reasons discussed below, this Court will grant the habeas petition in part and direct Respondent to calculate Petitioner's earned TCs and apply the TCs in accordance with 18 U.S.C. §§ 3632(d)(4)(c) and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), this Court has substituted the current Acting Warden of the FCI Fort Dix as Respondent in this matter, after the retirement of Warden David Ortiz.

3624(g). This decision does not preclude the BOP from honoring the detainer lodged against Petitioner.

## I. JURISDICTION

Jurisdiction under 28 U.S.C. § 2241 exists, in relevant part, where a prisoner alleges "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Third Circuit has held that habeas jurisdiction exists over a prisoner's claim that the BOP miscalculated his sentence, where the claim "if successful, would result in his speedier release from custody[.]" *Eiland v. Warden Fort Dix FCI*, 634 F. App'x 87, 89 (3d Cir. 2015). Likewise, Petitioner's claim that he is entitled to earlier supervised release upon application of his earned TCs is properly brought under § 2241 because he presents a challenge to the duration of his confinement.

## II. THE FIRST STEP ACT TIME CREDITS

On January 19, 2022, the BOP issued its final rule codifying the BOP's procedures for earning and application of TCs under the FSA. In a comment to the final rule, the BOP stated, consistent with this Court's holding in *Goodman v. Ortiz*, No. CV 20-7582 (RMB), 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020), that "FSA Time Credits should be earned for programs successfully completed on or after December 21, 2018, the date of the enactment of the First Step Act, instead of January 15, 2020, as indicated in the proposed rule."[2]

> [t]he FSA provides that eligible inmates earn FSA Time Credits toward prerelease custody or early transfer to

---

[2] Available at https://www.federalregister.gov/documents/2022/01/19/2022-00918/fsa-time-credits.

supervised release for successfully completing approved Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate based on the inmate's risk and needs assessment. Inmates eligible to apply Time Credits under the FSA include individuals sentenced under the U.S. Code. As required by the FSA, an inmate cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. However, such inmates may still earn other benefits for successfully completing recidivism reduction programming, such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs or PAs, as authorized by the Bureau.

Pertinent here, the BOP amended the interim rule

> to allow inmates eligible under the First Step Act to receive retroactive Time Credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. In determining how to award FSA Time Credits during the period before all individualized risk and needs assessments had been completed, the Bureau faces administrative challenges. Consistent with the phased-in approach contemplated by the FSA, the Bureau did not have mechanisms in place to methodically track participation in EBRRs and PAs until January 15, 2020, because comprehensive uniform tracking codes did not exist. In addition, it was not until that date that the Bureau had completed individualized risk and needs assessments for every inmate—and thus had a basis to conclude that there was an evidence-based reason to assign a particular program to, or recommend particular activities for, an inmate in order to reduce a particular inmate's risk of recidivism. Thus, in many instances, inmates were participating in programs for reasons other than addressing a criminogenic need.
>
> Due to these administrative difficulties, for inmates participating in programming after the date of the FSA's enactment, but before the date that Bureau had completed all risk and needs assessments (December 18, 2018, to January 14, 2020), it is not feasible for the Bureau to connect individual inmate participation in programming to individualized risk and needs assessments, since the risk

3

> and needs assessment tool did not exist until well after the date of the FSA's enactment. Instead, for inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020 and be awarded Time Credits accordingly.

*See* supra n. 2.

### III.   BACKGROUND

#### A.   The Original Petition

As mentioned above, before Petitioner filed his original petition, this Court held in *Goodman* that prisoners who earned sufficient TCs during the phase-in period of the FSA's recidivism risk reduction program "could be released prior to the end-date [January 15, 2022] for the two-year phase-in[.]" *Goodman*, 2020 WL 5015613, at *6 The BOP disagreed with *Goodman* at that time. Thus, when Petitioner filed his petition for writ of habeas corpus under 28 U.S.C. § 2241 in June 2021, the BOP denied Petitioner's administrative remedy request for application of his earned TCs toward early release. (Pet., Docket No. 1 at 2.) In answer to the petition, Respondent opposed habeas relief based on Petitioner's failure to exhaust administrative remedies[3] and on

---

[3] By Order dated August 17, 2022, this Court held that because Petitioner raised a claim of statutory interpretation, he was not required to exhaust administrative remedies prior to filing his habeas petition under § 2241. (Order, Docket No. 23 at 1, n. 2.)

4

the merits of his claim that BOP should apply his earned TCs. (Answer, Docket No. 6.)

### B. The BOP Final Rule

While the habeas petition was pending, and as the January 15, 2022 date approached, change was on the horizon. The BOP proposed rule on implementation of FSA TCs was published in the Federal Register on November 25, 2020. 85 FR 75268. The public comment period ended on January 25, 2021.[4] As a result of a large number of responses during the public comment period, the January 2022 BOP final rule contained many significant changes. Acknowledging the new rule, this Court ordered Respondent to calculate Petitioner's TCs under the new rule and file a supplemental brief on whether the habeas petition was moot. (Order, Docket No. 8.)

### C. The Parties' Supplemental Briefs

Respondent submitted that Petitioner had not earned any TCs applicable toward pre-release custody because inmates were only eligible to apply TCs "if they have 'been determined under the [PATTERN] System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner.' 18 U.S.C. § 3624(g)(1)(D)(i)(II)" (Respt's Supp. Brief, Docket No. 12 at 1.) Respondent explained that the BOP prioritized inmates for whom it would calculate earned TCs to those who had minimum or low risk PATTERN scores and were within 24 months of

---

[4] FSA Time Credits, available at https://www.federalregister.gov/documents/2022/01/19/2022-00918/fsa-time-credits. The comment period was reopened from October 18, 2021 to November 17, 2021, solely on the issue of whether D.C. offenders in BOP custody were eligible for TCs.

release. (*Id.*) Petitioner did not fall into this category because his medium PATTERN score made him ineligible. (*Id.*) Further, Respondent noted that Petitioner had not completed any recidivism risk reduction programs or productive activities for his assessed needs. (Respt's Supp. Brief, Docket No. 12 at 2.) Nonetheless, the petition was not moot because Petitioner was seeking immediate application of earned TCs. (*Id.*)

Petitioner, now represented by counsel, filed a supplemental brief in response. Contrary to Respondent's position that Petitioner had not earned any TCs, Petitioner noted that the BOP final rule permitted inmates with a higher PATTERN score to earn TCs, and that credits could be earned retroactive to the enactment of the First Step Act on December 21, 2018. (Petitioner's Supp. Brief, Docket No. 18 at 2.) Petitioner contended that he was in danger of untimely release because he had earned at least 410 days of TCs retroactive to December 21, 2018, resulting in a release date of June 7, 2022. (*Id.* at 3.) Acknowledging that his medium PATTERN score precluded application of his earned TCs, Petitioner asserted that he had maintained good conduct for over two years, and his case manager had not yet awarded the point reduction that would bring his PATTERN score to low. (*Id.* at 3.)

Petitioner contested Respondent's claim that he could only earn TCs for his "identified needs" based on a risk and needs assessment. Petitioner had been waitlisted for courses based on his assessed needs. (*Id.* at 4.) Addressing the shortage of programs available, the BOP stated that "inmates will not be penalized if specifically recommended EBRR Programs or PAs are unavailable to them…." (*Id.*, quoting 87

6

Fed. Reg. 2711.) Thus, Petitioner contended that he should be awarded TCs for his work as a barber, despite the position not falling under UNICOR or Federal Prison Industries, and that he should earn credit for religious activities. (*Id.* at 5.)

Petitioner then filed a supplemental brief to inform the Court that, as predicted, his PATTERN score had changed to low, which made him eligible for application of TCs. (Petitioner's Supp. Letter Brief, Docket No. 19.) Furthermore, Petitioner asserted it is undisputed that his Good Conduct Time release date is July 22, 2023, and his home detention eligibility date is as early as March 1, 2023. (*Id.* at 2.) Thus, based on the 410 days of TCs that he claims, his release date would be June 7, 2022, a date that has passed. (Petitioner's Supp. Letter Brief, Docket No. 19.) Petitioner requested his immediate release. (*Id.*) The following day, this Court ordered Respondent to show cause why habeas relief should not be granted. (Order, Docket No. 20.)

**D.  The Parties' Responses to the First Order to Show Cause**

Respondent agreed that Petitioner's most recent PATTERN risk score is low but maintained that Petitioner required two consecutive minimum or low PATTERN scores for application of TCs to prerelease custody under 18 U.S.C. § 3624(g). (Respt's Supp. Brief in Response to Order to Show Cause, Docket No. 21 at 2.) Respondent further noted that even if Petitioner had two consecutive qualifying PATTERN scores, he could not be released because there is an active detainer lodged on him by the Pennsylvania Board of Probation and Parole. (*Id.*) The BOP looked to Program Statement 7310.04, Community Corrections Center (CCC)

Utilization and Transfer Procedure, and determined that "any First Step Act ETCs that Moody has earned cannot be applied at this time because of the active detainer for pending criminal charges lodged on his account." (Respt's Supp. Brief in Response to Order to Show Cause, Docket No. 21 at 2.) Respondent reasoned that

> 18 U.S.C. § 3624(g)(2) defines the types of prerelease custody that the Bureau of Prisons may place an inmate in as Home Confinement and RRCs. In accordance with Program Statement 7310.04, inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement shall not ordinarily participate in CCC programs.

(Respt's Supp. Brief in Response to Order to Show Cause, Docket No. 21 at 2, internal citations omitted).

Petitioner responded that the docket sheet provided by Respondent did not reflect any violation of parole ("VOP") against Petitioner in Pennsylvania. (Response to Supp. Brief by Respondent, Docket No. 22 at 1.) Even if there was a VOP detainer lodged, Petitioner argued that it is not a "pending criminal charge" which would prevent application of his TCs. (*Id.*) Petitioner explained:

> [t]he offense date of the docket number in question is 4/27/2006, over sixteen years ago. According to Respondent's submission, the detainer listed was lodged on December 7, 2017, when Defendant was already in federal custody for nearly three years (beginning 01/14/2015). Petitioner Moody did not obtain a new criminal charge in Pennsylvania while in federal prison. If any detainer exists, such would be based on the instant federal conviction. It would defy logic that a violation based on the conviction that is the subject of Petitioner's current federal imprisonment could simultaneously operate to bar Petitioner's release from the same sentence. Such would be fundamentally unfair to Petitioner. A parole violation does not constitute a pending criminal charge, as neither the 2006 PA charge nor the present

8

>federal charge are "pending". The charge against Petitioner in the Commonwealth of Pennsylvania was disposed of in 2008 and Petitioner served his sentence in Pennsylvania State Prison.

(Response to Supp. Brief by Respondent, Docket No. 22 at 1-2.)

Additionally, Petitioner avowed that he was not seeking prelease custody but rather early placement on supervised release, which required only that "the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner" (*Id.* at 2, quoting 18 U.S.C. § 3624(g)(1)(D)(ii)). In contrast, § 3624(g)(1)(D)(i)(I), cited by Respondent, requires two assessments with a low or minimum recidivism risk score before a prisoner can be placed in *prerelease custody to a residential reentry center or home confinement* upon application of his TCs. (*Id.*) (emphasis added). Based on the disputed facts and the question over which statutory provision is applicable to Petitioner's request for habeas relief, this Court issued a second Order to Show Cause why the habeas petition should not be granted. (Order, Docket No. 23.)

### E.    The Parties' Responses to the Second Order to Show Cause

Respondent provided further support to establish that there is a detainer lodged against Petitioner. (Respt's Reply Brief in Response to Order to Show Cause, Docket No. 24 at 2.) Respondent clarified that,

>on November 13, 2017, Pennsylvania Board of Probation and Parole employee Elliot Smeal sent a request for a detainer to the BOP in response to an inquiry regarding Moody's parole violation in Case No. CP-23-CR-004005-2006. Smeal indicated that a warrant was being issued because Moody had not returned to the custody of Pennsylvania officials and no revocation hearing had yet

> been held. Smeal further stated that revocation proceedings would remain pending until Moody had returned to the custody of Pennsylvania authorities. On December 7, 2017, the Pennsylvania Board of Probation and Parole lodged the official detainer.
>
> After a detainer has been lodged, no later than 90 calendar days before the inmate's release, BOP staff are required to notify the authority that has lodged a detainer of the inmate's projected release date. *See* BOP Manual, Chapter 6, Page 4. The authority that filed the detainer must then notify the BOP of its intent to take custody of the inmate. If the requesting authority indicates in writing that it will not take custody of the inmate, the detainer will be removed at that time. Here, to date, the BOP has not received any correspondence from the Pennsylvania Board of Probation and Parole requesting the removal of the detainer. Accordingly, no later than 90 calendar days before Mr. Moody's projected release date of September 1, 2023, the BOP will notify the Pennsylvania Board of Probation and Parole of Moody's projected release date.

(Respt's Reply Brief in Response to Order to Show Cause, Docket No. 24 at 2-3) (citations omitted).

Moreover, Respondents submit that the detainer was known to Petitioner, who acknowledged the detainer in April and July 2022, in his Individual Needs Plan and his Summary Reentry Plan. (*Id.* at 3.) Finally, Respondent contends this is the first time that Petitioner requested application of his TCs to his term of supervised release. (*Id.* at 3.) While his low PATTERN score qualifies for this relief, Respondent will not release Petitioner at this time due to the detainer. (*Id.*)

Petitioner responded again. First, he notes that Respondent provided a copy of his release plan, which shows his plan calls for his supervised release. (Petitioner's Supp. Letter Brief, Docket No. 25 at 1, citing Attach. E, Docket No. 24-2 at 17.)

10

Second, Petitioner disputes that the detainer constitutes a pending criminal charge that precludes his early release, because the case referenced in connection with the detainer, the crime resulting in his federal sentence, is an adjudicated matter. (Petitioner's Supp. Letter Brief, Docket No. 25 at 1.) Moreover, in opposing Petitioner's early supervised release, Respondent erroneously relies on regulatory provisions that apply only to prerelease home confinement and residential reentry centers. (*Id.,* citing BOP Program Statement 7310.04.)

Respondent submitted a letter brief on September 7, 2022. (Resp't Reply Brief in Response to Order to Show Cause, Docket No. 26.) Respondent argues that the BOP is prohibited from releasing Moody to either prerelease custody or supervised release as long as there is an active detainer for him. Moreover, the BOP has discretion to determine the placement of inmates who have earned sufficient TCs to receive a sentence reduction. Moody's supervision release plan does not demonstrate how the BOP will apply his earned TCs.

Petitioner followed up with a letter brief on September 20, 2022. Petitioner has now received a second low recidivism risk PATTERN score, which makes him eligible for application of earned TCs to either prerelease custody or supervised release, and he seeks supervised release. (Petr's Letter Brief, Docket No. 27.) Petitioner submits that the only thing standing in the way of his early release is the Commonwealth of Pennsylvania's detainer, which he believes is invalid or illegal.[5] Even if the BOP must ultimately honor the detainer, which Petitioner does not

---

[5] The issue of the validity of the detainer is not before this Court.

concede, he contends that BOP must immediately calculate and apply his FSA credits and determine whether he shall be released to the Commonwealth of Pennsylvania or to immediate supervised release.

## IV.   DISCUSSION

The passage of time, the change in the BOP's implementing rule, and the parties' arguments have narrowed the issue before the Court. Petitioner seeks application of his earned TCs toward early supervised release pursuant to 18 U.S.C. § 3624(g)(1)(D)(ii). Petitioner's July 19, 2022 Supervision Release Plan indicates that Petitioner is eligible for supervised release, without application of Time Credits, on September 1, 2023, and that he requested his term of supervised release be relocated to the Northern District of Georgia. (Attach. E, Docket No. 24-2 at 17.) The Supervision Release Plan does not address application of Petitioner's earned TCs toward early supervised release. (*Id.*) The Pennsylvania detainer is noted on the plan. (*Id.*)

Petitioner is eligible for application of TCs earned toward his early supervised release if he meets the following requirements under 18 U.S.C. § 3624, which provides, in relevant part:

> (g) Prerelease custody or supervised release for risk and needs assessment system participants.--
>
> > (1) Eligible prisoners.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--
> >
> > > (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the

> "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
>
> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and . . .
>
>> (D)(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner. . . .
>
> (3) Supervised release.--If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

In turn, 18 U.S.C. 3632 provides,

> (4) Time credits.--
>
>> (A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>>
>>> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

13

>   (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
>   (B) Availability.--A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed--
>
>   >   (i) prior to the date of enactment of this subchapter; or
>   >
>   >   (ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).
>
>   (C) Application of time credits toward prerelease custody or supervised release.--Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(4)(D) provides a list of crimes of conviction that render a prisoner ineligible for TCs and subsection (E) precludes deportable prisoners from applying TCs to prerelease custody or supervised release.

   If the Director of the BOP [or presumably a designee, such as the warden] determines that Petitioner's earned TCs should be applied to early supervised release,

rather than prerelease custody to a residential reentry center or home confinement,[6] there is no statutory provision or BOP regulation that precludes application of TCs toward early supervised release of prisoners who have state detainers lodged against them. As Petitioner suggested, the provisions regarding detainers in BOP Program Statement 7310.04 apply only to prerelease custody to residential reentry centers and home confinement.[7] As Respondent points out, however, supervised release is different because it does not involve BOP custody. "[S]upervised release commences on the day the person is released from imprisonment . . . ." 18 U.S.C. § 3624(e); *see United States v. Johnson*, 529 U.S. 53, 57 (2000) ("Supervised release does not run while an individual remains in the custody of the Bureau of Prisons.") When a prisoner is subject to a state detainer, the BOP cannot immediately release a prisoner without notifying the state to determine whether it will take custody of the prisoner. This would only appear to present a problem if the BOP has not calculated a prisoner's earned TCs in sufficient time to give the state the notice, typically no later than 90 days before the supervised release date, to determine whether it will take custody of the prisoner.

Petitioner has a reasonable belief that he has earned sufficient TCs, which if applied to early supervised release, would entitle him to earlier supervised release under the First Step Act. 18 U.S.C. § 3624(g)(3) states "the Director of the Bureau of

---

[6] It would appear that since Petitioner is not eligible for early release to a residential reentry center or home confinement pursuant to BOP Program Statement 7310.04, based on the detainer, that early supervised release is the only reasonable choice for application of Petitioner's Time Credits.

[7] Available at https://www.bop.gov/policy/progstat/7310_004.pdf (last visited August 29, 2022).

Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." This discretionary language would appear to permit the BOP to honor the detainer by giving the Commonwealth of Pennsylvania sufficient notice of Petitioner's supervised release date, based on its calculation and application of Petitioner's earned TCs.

Therefore, Respondent shall immediately calculate Petitioner's earned TCs. On August 1, 2022, Petitioner notified this Court that his PATTERN score had been adjusted to minimum. According to his supervised release plan, Petitioner is eligible for supervised release on September 1, 2023, without application of any Time Credits.[8] If he has earned sufficient Time Credits to receive the maximum of 12 months early supervised release, his release date would be September 1, 2022. It is now 30 days beyond that date. Although Respondent has not had the benefit of this Court's ruling, Respondent should have anticipated the possibility of this Court granting habeas relief and begun preparations to calculate Petitioner's Time Credits and notify the Commonwealth of Pennsylvania of Petitioner's potential early release. Therefore, rather than giving Respondent the typical full 90-day period to notify the Commonwealth of Pennsylvania of Petitioner's impending early release, this Court will reduce that period to 14 days. If the Commonwealth does not take custody by that date, BOP shall release Petitioner to early supervised release within 14 days of the date

---

[8] (Attach. E, Docket No. 24-2 at 17.)

of this Opinion and accompanying Order, assuming Petitioner has earned sufficient TCs for the maximum 12-month early supervised release period under § 3632.

## V.   CONCLUSION

For the reasons discussed above, the Court will grant the habeas petition in part and direct Respondent to calculate Petitioner's earned TCs under the FSA immediately, and provide an update to this Court within 7 days of the date of entry of this Order. If Petitioner has earned sufficient Time Credits, Respondent shall notify of the Commonwealth of Pennsylvania of Petitioner's supervised release date of October 18, 2022.

An appropriate Order follows.

Date:  **October 3, 2022**

                                                s/Renée Marie Bumb
                                                **RENÉE MARIE BUMB**
                                                **United States District Judge**